IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SANTOS EFRAIN CARBAJAL BENITES,
*Petitioner*,
v.

TODD BLANCHE *et al.*,
*Respondents*.

1:26-cv-02239-MSN-WBP

**ORDER**

This matter comes before the Court on Santos Efrain Carbajal Benites's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Petitioner, a citizen of Honduras, received a final order of removal in 2016 but was granted withholding of removal. ICE later issued Petitioner an Order of Supervision ("OSUP"). On July 22, 2026, however, ICE officers arrested Petitioner when he appeared for a scheduled check-in. Petitioner contends that ICE failed to follow its regulations in revoking his OSUP. For the reasons that follow, the Court will grant his Petition.

## I. BACKGROUND

Petitioner is a citizen of Honduras. ECF 1 ¶1. He entered the United States on an unknown date before January 31, 2012. ECF 6-1 ¶ 6. On August 31, 2012, he was convicted in the United States District Court for the Eastern District of Virginia for Conspiracy to Distribute Five Kilograms or more of Cocaine in violation of 21 U.S.C. § 846 and sentenced to 120 months imprisonment. *Id.* ¶ 10. On November 4, 2015, following sentencing adjustments, Petitioner was transferred into civil immigration custody. *Id.* ¶ 11. On March 21, 2016, he was ordered removed by an Immigration Judge ("IJ") but granted Deferral of Removal to Honduras under the Convention Against Torture. *Id.* ¶ 12. All parties waived appeal of the IJ's order, making it administratively final. *Id.*

Petitioner was released on an OSUP on April 29, 2016. *Id.* ¶ 13. The OSUP states that Petitioner was granted supervision because "the agency has not effected your deportation or removal during the period prescribed by law." ECF 1-3 at 6. Petitioner then relocated to Virginia and was placed in the Alternatives to Detention Program, requiring him to appear for scheduled in-person visits. ECF 6-2 ¶ 14.

On July 22, 2026, at a routine check-in appointment at the ICE ERO Chantilly, Virginia Sub-Office, ICE detained Petitioner. ECF 1 ¶ 18. That same day, ICE formally revoked Petitioner's OSUP. ECF 6-2. The Notice, signed by an Assistant Field Office Director, states that Petitioner's release had been revoked pursuant to 8 C.F.R. § 241.4(*l*) because (1) the purposes of release had been satisfied, (2) "[c]ircumstances have changed in which ICE will be pursuing a Third Party Country Removal," and (3) "revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director of ERO." *Id.* at 1. The Notice does not state to which Third Party Country ICE intends to remove Petitioner. *Id.*

On July 22, 2026, ICE officers also conducted an informal interview with Petitioner to afford him an opportunity to respond to the reasons for the revocation of his OSUP. ECF 6-2 at 3. During the interview, Petitioner stated he was an FBI witness and claimed a fear for his life if he was removed from the United States. USCIS has scheduled, but not conducted, a fear screening for Petitioner. ECF 6-1 ¶ 18.

On July 24, 2026, Petitioner filed this Petition seeking his immediate release. ECF 1.

## II. DISCUSSION

### A. Revocation of Petitioner's Order of Supervision

Petitioner argues that ICE failed to follow its regulations in revoking his OSUP.[1] The Court agrees and concludes that Petitioner is entitled to release based on this claim.

[1] Federal Respondents first argue that this Court should decline to exercise jurisdiction over the Petition because Petitioner is a member of the non-opt out class in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass.

The Immigration and Nationality Act's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

"The procedures required to revoke each of these forms of release are different." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 208 (D. Mass. 2026). An order of release under section 241.4 may be revoked where (1) the purposes of release have been served, (2) an individual violates his conditions of release, (3) it is appropriate to enforce a removal order, or (4) DHS determines that revocation is in the public interest. 8 C.F.R. § 241.4(*l*)(2). By contrast, DHS may only revoke release that was ordered under § 241.13 if it makes "(1) an individualized determination (2) by [DHS] that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.'" *Phommachak*, 816 F. Supp. 3d at 208 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). "When § 241.13(i) governs

2025). ECF 6 at 9-12. As another court in this District has thoroughly explained, these arguments are meritless. *See Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 3-5 (E.D. Va. Feb. 3, 2026); *see also, e.g., Garcia-Rivera v. Noem*, 1:26 cv-00229-MSN-WBP, ECF 6 at 3 n.2 (E.D. Va. Mar. 2, 2026) (concluding same). As of the date of the entry of this Order, final judgment in *D.V.D.* has been stayed. *See D.V.D. v. Dep't of Homeland Sec.*, 1:25-cv-10676, ECF Nos. 242, 246 (D. Mass. Feb. 26, 2026). Moreover, Petitioner's challenge to the revocation of his Order of Supervision raise issues that are substantively different from the claims at issue in *D.V.D.*, which largely focus on the procedural due process protections due to noncitizens subjected to third-country removal. *See D.V.D. v. Dep't of Homeland Sec.*, 821 F. Supp. 3d. 102, 2026 WL 521557, at *27-40 (D. Mass. Feb. 25, 2026).

revocation, the procedures outlined for revocation under § 241.4(1) do not apply." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3.

Here, Respondents purported to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(*l*)(2), on the grounds that the "purposes of [his] release" had been served, and his case was under review for third country removal. ECF 6-2. The text of Petitioner's OSUP, however, strongly suggests that Petitioner was ordered released under 8 C.F.R. § 241.13. ECF 1-3 at 6. His OSUP states that DHS ordered Petitioner's release on supervision "[b]ecause the agency has not effected [his] deportation or removal during the period prescribed by law." *Id.* This text matches § 241.13, which states that DHS shall release individuals "who are subject to a final order of removal and are detained . . . after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of [his] removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). In contrast, to release Petitioner under § 241.4, DHS would have had to conclude that travel documents were not available, Petitioner did not pose a risk to safety or flight, and was not likely to violate the conditions of his release. 8 C.F.R. § 241.4(e). None of these findings appear on the face of Petitioner's OSUP; therefore, the Court concludes that § 241.13—not § 241.4—governs Petitioner's OSUP and the revocation of his release. *See Herber Baldemar Caal Pop v. Markwayne Mullin*, No. 1:26-cv-1886, ECF 10 at 7-8 (E.D. Va. Jul. 23, 2026).

Applying § 241.13, the Court concludes that Respondents did not properly revoke Petitioner's OSUP. Under § 241.13, it is Respondents who bear the burden to prove that circumstances have changed and that Petitioner's removal has become "significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)). Respondents have not come close to meeting that burden. To begin with, ICE did not formally revoke Petitioner's OSUP until he was detained. *See*

ECF 6-1 ¶ 16; ECF 1 at ¶ 18; ECF 6-2. His initial detention thus appears untethered to any basis in law. But, even setting that issue aside, there is simply nothing in the record to show that Petitioner's removal is likely. The Notice of Revocation of Release states only that "ICE will be pursuing a Third Party Country Removal at this juncture," and that Petitioner's "case is under review for removal to an alternate country." ECF 6-2 at 1. The Notice of Revocation of Release leaves unchecked the box stating that "ICE has obtained a travel document and scheduled your removal," and leaves the Country of Removal blank. *Id.*

Although Petitioner was subsequently served with a Notice of Removal informing him that ICE "intends to remove you to Mexico," ECF 6-3 at 1, and Respondents state that they intend to remove Petitioner to Mexico, *see* ECF 6 at 1, it is unclear whether Federal Respondents have obtained travel documents or Mexico's consent for his removal. As another Court in this District has recognized, "Mexico has rejected DHS's attempt to remove" certain individuals to Mexico. *See Garcia Cruz v. Hott*, No. 2-26-cv-00234-MSD-LRL, ECF 20 at 8-9 (E.D. Va. Apr. 23, 2026). It is also unclear whether Respondents will be able to remove Petitioner to Mexico even if they do obtain those items and obtain Mexico's consent. Petitioner has claimed a fear of removal to Mexico. ECF 7 at ¶ 19. Petitioner is entitled to IJ review of his credible fear claim before his removal can occur. *See Rojas Toj v. Mullin*, 2026 WL 1458900, at *5 (E.D. Va. May 21, 2026). In short, the only concrete changed circumstance that Respondents point to suggest Petitioner's removal has become "significantly likely in the reasonably foreseeable future," *Garcia-Rivera*, 2026 WL 1244545, at *3, is ICE's claimed *intent* to remove him to Mexico. This, alone, is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Rojas Toj*, 2026 WL 1458900, at *5 (concluding same).

Because Respondents have failed to follow § 241.13 in revoking Petitioner's OSUP and detaining him, and because that regulation was promulgated to protect Petitioner's right to due process, Petitioner's current detention is unlawful, and he is entitled to immediate release. *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Sokpa-Anku v. Mullin*, 1:26-cv-01504 (AJT/LRV), 2026 WL 1878709, at *3 (E.D. Va. June 29, 2026) ("In habeas cases where ICE revoked an OSUP in contravention of binding regulations, this Court has consistently vacated ICE's revocation of the OSUP and ordered the Petitioner's immediate release from custody.").[2]

### B. IJ Review of Credible Fear

Finally, Petitioner argues that he has a due process right not to be removed to any country to which he has expressed a fear of removal without IJ review of that claim.

The Court understands that Petitioner has not yet received a decision from USCIS as to his claim of a fear of persecution or torture in Mexico. ECF 6-1 ¶ 18. Because Petitioner is only entitled to IJ review of his claim if it is denied by USCIS, *see Serpas*, 2026 WL 1244544, at *6, Petitioner's claim is premature, and the Court will deny it without prejudice.[3]

## III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

---

[2] Petitioner, at times, appears to also argue that his current detention violations 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See, e.g.*, ECF 1 at 16. In his reply, however, Petitioner conceded that his "circumstances do not, standing alone, establish a *Zadvydas* violation during the presumptively reasonable period." ECF 7 at 7. As such, the Court takes no position on whether Petitioner's continued incarceration violates *Zadvydas*.

[3] The Court notes, however, that if USCIS denies his claim, Petitioner is entitled as a matter of due process to have that decision reviewed by an IJ. *See, e.g.*, *Serpas*, 2026 WL 1244544, at *7-8; *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *3 (E.D. Va. Mar. 2, 2026); *Matute-Rivera v. ICA Farmville Detention Ctr.*, 1:26-cv-01356, ECF 8 at 5-6 (E.D. Va. June 15, 2026).

ORDERED that Petitioner's Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13; and it is further

ORDERED Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

August 14, 2026
Alexandria, Virginia